UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRANDON ORAVETZ, | Case No.: 3:19-cv-00530-MMD-WGC |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 63 |
| J. PARR, | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Jacob Parr's Motion for Summary Judgment. (ECF Nos. 63, 63-1 to 63-8, 65-1 to 65-4, manually filed videos, errata at ECF Nos. 69-1 to 69-3.) Plaintiff filed a response. (ECF No. 79.) Parr filed a reply. (ECF No. 80.)

After a thorough review, it is recommended that the Doe defendants be dismissed without prejudice, and that defendant Parr's motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1-1.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

1       The court screened Plaintiff's complaint and allowed him to proceed with an Eighth
2 Amendment excessive force claim against Jacob Parr and various John Does. (ECF No. 4.)[1]
3       Plaintiff alleges that he had ongoing issues with Parr. On December 13, 2017, Plaintiff
4 was scheduled to be transferred to a different unit within ESP, and Parr and others came to his
5 cell and told him to "cuff up." Through the closed cell door, they handcuffed Plaintiff's hands
6 behind his back. They then told Plaintiff to kneel so that leg restraints could be secured. After
7 Plaintiff knelt down, however, his cell door opened and Parr tackled him, slamming his head to
8 the ground. Parr then punched Plaintiff repeatedly in the head and face while taunting Plaintiff
9 for complaining about him. Throughout the incident, Plaintiff claims he was lying on the ground
10 with his face down and his hands handcuffed behind his back. The incident left him with bumps,
11 bruises, lacerations and a split brow. He had such a severe headache he feared he had a
12 concussion, but did not receive treatment for his concussion.
13       Parr moves for summary judgment, arguing that he did not utilize excessive force against
14 Plaintiff, that Plaintiff's claim is *Heck*-barred, that Plaintiff's claim for injunctive relief is moot,
15 and that he is entitled to qualified immunity.

## II. LEGAL STANDARD

17       The legal standard governing this motion is well settled: a party is entitled to summary
18 judgment when "the movant shows that there is no genuine issue as to any material fact and the
19 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*
20 *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the
21 evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

---

[1] To date, Plaintiff has not moved to substitute in defendants for the John Does; therefore, it is recommended that the John Does be dismissed without prejudice.

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). That being said, the Ninth Circuit has interpreted that while *Whitley* used the phrase "maliciously and sadistically," it does not require proof of that the officer enjoyed the use of force. *Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018). Instead, the focus is on whether the officer had purpose to cause harm: "[A]n officer who harms an inmate in part of a good-faith effort to maintain security has acted constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm,' … has engaged in excessive force, provided that the other elements of excessive force have been met." *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). "The extent of injury may also provide some indication of the amount of force applied." *Id*.

That being said, not "every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79. If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be limited. *See id*. at 1180.

Parr's contemporaneous report states that at 2:30 p.m., he and two other officers attempted to move Plaintiff to another cell. Parr placed wrist restraints with a lead on Plaintiff, double locked them and then asked Plaintiff to kneel down so he could place leg restraints. Plaintiff knelt down, and Parr put his arm up signaling for the door to be opened. As the door was opening, Parr claims that Plaintiff brought his right leg forward and thrust it back toward Parr's right shin with enough force to buckle Parr's knee and force him back into another officer. At that point, in fear the assault would continue, Parr used minimal force to place Plaintiff face down on the ground and gain control. Once on the ground, Parr placed his hands on Plaintiff's

shoulders to ensure he could not assault another officer. Shortly after the incident, CERT officers arrived to relieve Parr. Parr felt a sharp pain in his knee that went away by walking around. (ECF No. 63-1 at 4-5.)

Reports from other officers present that day corroborate Parr's version of events. (ECF No. 63-1 at 2-4.)

Plaintiff was seen by medical after the incident. A laceration to the left lateral eyebrow was noted. Medical staff recommended he receive stitches for the split brow, but he refused, and only agreed to have antibiotic ointment and a butterfly bandage placed on his eye. (ECF No. 63-1 at 5; ECF No. 65-1 at 3.) Plaintiff requested more supplies for his brow injury two days later, but did not submit any kites about headaches. (ECF No. 65-3 at 2.)

As a result of the incident, Plaintiff was charged with assault. Plaintiff declined to attend his disciplinary hearing, and was found guilty of assault. (ECF Nos. 63-5, 63-6.)

Parr denies the use of unlawful force, but states that he only used that force which was necessary to restore discipline.

Plaintiff's response reiterates the allegations of his complaint: that on December 13, 2017, he was scheduled to be transferred to another unit at ESP, and Parr and two other officers arrived and told Plaintiff to "cuff up." They handcuffed his hands behind his back, and Plaintiff was instructed to kneel down so leg irons could be placed on his legs. Plaintiff did so, and the door was opened and Parr slammed Plaintiff's head into the floor and then repeatedly punched Plaintiff in the face while taunting Plaintiff, "You like to complain you little bitch."

Preliminarily, while Plaintiff did not provide a declaration or affidavit in support of his response as instructed by Chief Judge Du in her order at ECF No. 70, the Ninth Circuit has said that a verified complaint may serve as an affidavit for purposes of summary judgment if it is

based on personal knowledge and if it sets forth the requisite facts with specificity. *Moran v. Selig*, 447 F.3d 748, 760 n. 16 (9th Cir. 2006) (citing *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc)). Here, Plaintiff's response asserts the same facts as are alleged in his verified complaint concerning the use of force by Parr. The statements—Plaintiff's version of what happened—are clearly based on his personal knowledge, and are set forth with sufficient specificity to constitute competent evidence.

There are several disputes regarding material facts in this case: Parr minimizes the injury suffered by Plaintiff, but it is clear that Plaintiff did suffer a laceration to his brow for which medical staff recommended stitches. There is also a dispute about the need for the application of force and the amount of force used. Parr maintains that Plaintiff kicked out his foot out when the door to the cell was opened in an act of aggression against Parr, which required the officers to subdue Plaintiff. Plaintiff, on the other hand, contends that Parr opened the door and immediately slammed Plaintiff to the ground and began punching and taunting Plaintiff. Parr asserts that Plaintiff posed a threat to the officers, while Plaintiff maintains he was handcuffed behind his back and did not resist.

Parr offers video evidence to support his defense; however, the video is not as clear cut as Parr suggests. The tier camera shows three officers at Plaintiff's cell. Presumably Parr raises his hand for the cell door to be opened. It cannot be seen whether Plaintiff stuck his foot back or not, but very quickly after the door opens the three officers rush inside the cell. While Parr maintains that the video clearly shows Parr being knocked back into the other two officers, the angle of the video and the fact that there are two other officers standing around Parr does not provide a clear view of Parr's movement. Moreover, the video does not show any detail of what occurred once the three officers were inside the cell, which is when Plaintiff claims that Parr punched him.

Parr also submits a second video, the CERT video, to support his defense. The CERT video does not show the incident as it occurred, but rather, what transpired after the CERT officers arrived. It does show a laceration and blood on Plaintiff's brow, and medical staff can be heard saying that Plaintiff required stitches. In response, Plaintiff said he only wanted a butterfly bandage.

Parr also argues that Plaintiff is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), from bringing this excessive force action because Plaintiff's disciplinary conviction for assault has not been reversed, expunged, or called into question.

*Heck v. Humphrey*, 512 U.S. 477 (1994) held that a state prisoner's claim for damages is not cognizable under section 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless he can demonstrate the conviction or sentence has been invalidated. *Heck*, 512 U.S. at 480-82; *see also Edwards v. Balisok*, 520 U.S. 641, 643-47 (1997) (extending *Heck* to section 1983 claims that, if successful, would imply the invalidity of deprivations of good-time credits provided for by prison disciplinary proceedings). "But the Supreme Court has clarified that *Heck* does not bar a § 1983 claim that 'threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence.]'" *Wilkerson v. Wheeler*, 772 F.3d 834 (9th Cir. 2014) (alteration original, quoting *Muhammad v. Close*, 540 U.S. 749, 751 (2004)).

Here, Plaintiff was found guilty of assault and was given 180 days in disciplinary segregation and was required to pay restitution. He was not referred for forfeiture of statutory good-time credits. (*See* ECF No. 63-5 at 4.) Therefore, this claim has no consequence for the duration of Plaintiff's sentence, and *Heck* does not apply.

Parr also argues that he is entitled to qualified immunity.

1    "In evaluating a grant of qualified immunity, a court considers whether (1) the state
2 actor's conduct violated a constitutional right and (2) the right was clearly established at the time
3 of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021)
4 (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*,
5 555 U.S. 223 (2009)).

6    First, viewing the facts in the light most favorable to Plaintiff, a fact finder could
7 conclude that Parr violated Plaintiff's rights under the Eighth Amendment.

8    Second, it was clearly established at the time of this incident that an inmate has a
9 constitutional right to be free from excessive force used maliciously and sadistically to cause
10 harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

11    Finally, Parr argues that Plaintiff's request for injunctive relief to never return to ESP
12 should be denied as moot because Plaintiff is no longer housed at ESP.

13    "An inmate's release from prison while his claims are pending generally will moot any
14 claims for injunctive relief relating to the prison's policies unless the suit has been certified as a
15 class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (citations omitted.) There is,
16 however, an exception to the mootness doctrine "when (1) the challenged action is too short in
17 duration to be full litigated prior to its expiration and (2) there is a reasonable expectation that
18 the injury will occur again." *Id*. (citation omitted).

19    The parties do not address the possibility that Plaintiff could be transferred back to ESP.;
20 however, the docket reflects that during the pendency of this case alone Plaintiff has been moved
21 from Northern Nevada Correctional Center (NNCC) to Lovelock Correctional Center (LCC),
22 back to NNCC, and then to High Desert State Prison (HDSP). (ECF Nos. 33, 48, 59.) Therefore,
23 it seems there is a reasonable possibility that he could be moved back to ESP, and Parr's motion

for summary judgment as to the injunctive relief component of Plaintiff's claim should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

**DISMISSING** the John Doe defendants **WITHOUT PREJUDICE**, and **DENYING** defendant Parr's Motion for Summary Judgment (ECF No. 63).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 8, 2021

_____
William G. Cobb
United States Magistrate Judge